## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CARRIE A. CHATTERTON,                                Case No. 1:12-cv-284
     Plaintiff,                                     Beckwith, J.
                                                     Litkovitz, M.J.
    vs.

COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
     Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in

opposition (Doc. 15), and plaintiff's reply memorandum. (Doc. 17).

**I.  Procedural Background**

Plaintiff filed applications for DIB and SSI in July 2007, alleging disability since

September 23, 2005 due to: Crohn's disease, ulcerative colitis, gastric and esophageal ulcers,

degenerative joint disease, bipolar disorder, depression, anxiety, obsessive compulsive disorder,

back injuries, and knee injuries. Plaintiff's applications were denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Amelia G. Lombardo. Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing. On September 20, 2010, the ALJ issued a decision

denying plaintiff's DIB and SSI applications.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.     The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since September 23, 2005, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: degenerative disk disease of the lumbosacral spine; bipolar disorder; and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Giving the [plaintiff] the full benefit of doubt with regard to her allegations and subjective complaints, it is found that she is limited to simple, repetitive tasks that would afford her the opportunity to alternate between sitting and standing every 30 minutes. She is further limited to jobs that would require stooping and crouching on no more than an occasional basis. She should not be expected to perform assembly line work.
>
> 5. The [plaintiff] is unable to perform any past relevant work[1] (20 CFR 404.1565 and 416.965).

---

[1]Plaintiff has past relevant work as a drycleaner counter attendant, kitchen helper, telemarketer, and gas station cashier. (Tr. 33-34).

6. The [plaintiff] was born [in] . . . 1977 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 23, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-22).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a

4

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

Plaintiff raises three assignments of error: (1) the ALJ erred in determining the severity of plaintiff's mental and physical impairments; (2) the ALJ usurped the role of a medical expert and rendered an improper medical opinion; and (3) the hypothetical question presented to the VE failed to properly account for all of her supported limitations. For the following reasons, the Court finds the instant matter should be reversed and remanded as the ALJ's findings are not substantially supported by the record evidence.

1.  <u>The ALJ's severity findings are not supported by substantial evidence.</u>[2]

Plaintiff contends the ALJ erred by finding that her severe impairments were limited to

---

[2]Plaintiff's first assignment of error appears to conflate arguments related to the ALJ's severity determinations and RFC findings. For clarity's sake, the Court's analysis of plaintiff's first assignment of error is limited to her severity argument.

degenerative disc disease, bipolar disorder, and substance abuse.   Plaintiff argues that the record

supports findings that she has other severe mental impairments, as well as severe Crohn's disease

and associated diarrhea.   In support, plaintiff cites to her long history of mental health treatment,

including: multiple hospitalizations for depression; diagnosis of anxiety disorder; medical

opinions that her mental impairments cause moderate functional limitations; use of various

psychotropic medications; and low GAF scores.[3]   (Doc. 10 at 11-14, citing Tr. 268, 276-77, 280,

294, 500-05, 516, 533-36, 663-64, 669).   Plaintiff further asserts the ALJ erred by failing to find

that her Crohn's disease and associated diarrhea constitute severe impairments, claiming the

record evidence demonstrates that these conditions cause significant limitations on her functional

abilities.   (Doc. 10 at 14-17, citing Tr. 309-10, 313, 318, 325, 346, 489, 572, 577, 585, 594, 605,

918, 921, 924, 936, 951).   Plaintiff's arguments are well-taken.

 A severe impairment or combination of impairments is one which significantly limits the

physical or mental ability to perform basic work activities.   20 C.F.R. § 404.1520(c).   Basic

work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the

ability to perform physical functions like walking, standing, lifting, and carrying; the capacity for

seeing and hearing; and the ability to use judgment, respond to supervisors, and deal with

changes in the work setting.   20 C.F.R. § 404.1521(b).

 Plaintiff is not required to establish total disability at this level of the sequential

evaluation.   Rather, the severe impairment requirement is a threshold element which plaintiff

must prove in order to establish disability within the meaning of the Act.   *Gist v. Sec'y of*

---

[3]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.   It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.   *See Martin v.*

*H.H.S.,* 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a *"de minimis* hurdle"* in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

      A.    *Mental Impairments*

      Plaintiff argues the ALJ erred by finding that her only severe mental impairments were bipolar disorder and polysubstance abuse. Plaintiff contends that the medical evidence of record documents a significant history of mental health treatment, including the diagnosis and treatment of anxiety, which supports a finding that plaintiff has additional severe mental impairments. The Court agrees.

      The ALJ's decision provides that plaintiff has three severe impairments: (1) degenerative disc disease of the lumbosacral spine; (2) bipolar disorder; and (3) polysubstance abuse. (Tr. 16). The ALJ determined that "[t]here is no substantial evidence of any other impairments which significantly limit the [plaintiff]'s vocational capabilities." *Id.* Relying on this broad analysis of the evidence, the ALJ declined to engage in any meaningful discussion of plaintiff's other mental impairments despite numerous records documenting plaintiff's anxiety. Indeed, the ALJ only briefly mentions plaintiff's other mental impairments during her summary of plaintiff's testimony and medical records. *See, e.g.*, Tr. 13 ("[plaintiff] reports that she was afflicted with

---

*Commissioner,* 61 F. App'x. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

anxiety); Tr. 15 (noting that plaintiff was treated for anxiety disorder and hospitalized for complaints of depression); Tr. 16 (noting that consultative and treating psychiatric sources have diagnosed plaintiff with anxiety disorder). The ALJ's cursory discussion of the evidence of plaintiff's anxiety disorder fails to accurately portray plaintiff's impairments and associated limitations.

The following evidence demonstrates that plaintiff's anxiety disorder is more than a "slight abnormality" having more than a "minimal effect" on plaintiff's work capabilities. *Farris*, 773 F.2d at 90. The record includes a history of plaintiff's treatment for anxiety beginning in 2004. *See generally* Tr. 294-312, 539, 545, 548-56, 947-51. In January 2004 plaintiff sought mental health treatment for what she believed was bipolar disorder due to a family history of the disease. (Tr. 296). At that time plaintiff reported the following symptoms: constant worry, panic attacks, self-mutilation, and irritability and anger with mania. (Tr. 299). Plaintiff was determined to be in need of management skills as evidenced by ongoing symptoms of anxiety, mania, and depression. (Tr. 300). Plaintiff was diagnosed with bipolar and anxiety disorders and referred for individual counseling. (Tr. 304-05).

Throughout, the record details similar and consistent findings and diagnoses of anxiety. *See* Tr. 294, 304, 309, 442-66, 473-76, 500, 511, 533-50, 669, 677, 687-89, 847, 951. Moreover, every single treating, examining, and reviewing psychiatric or psychological opinion of record includes a diagnosis of anxiety disorder. Paul A. Deardorff, Ph.D., examined plaintiff in December 2007 for disability purposes and diagnosed her with anxiety disorder NOS in addition to bipolar disorder NOS and opined that she had moderate difficulties in her ability to relate to others. (Tr. 500). Dr. Deardorff's opinion was affirmed by state agency reviewing

8

psychologist Alice Chambly, Psy.D, who further opined that plaintiff was moderately limited in her ability to relate to others and "retained the capacity for work that is simple and routine in nature with *superficial contact*." (Tr. 504) (emphasis added). Following plaintiff's hospitalization in March 2008 for prescription medication overdose,[4] the opinions of Dr. Deardorff and Dr. Chambly were affirmed by reviewing psychologist Steven J. Meyer, Ph.D., who noted diagnoses of depression, anxiety, and personality features. (Tr. 568). Further, in December 2009, plaintiff's treating psychiatrist, Vinod Patwa, M.D., noted anxious and depressed mood on mental status examination and diagnosed plaintiff with panic attacks, post-traumatic stress disorder, obsessive compulsive disorder, and borderline personality disorder. (Tr. 948).

In light of this evidence, the ALJ's finding of "no substantial evidence" of a severe mental impairment other than bipolar disorder and polysubstance abuse is not substantially supported. The Court is particularly persuaded by the consistent findings of every psychiatric specialist of record who all opined that plaintiff suffers from mental impairments not recognized by the ALJ, notably anxiety. Dr. Deardorff, Dr. Chambly, and Dr. Meyer all concurred that plaintiff had some functional limitations related to her anxiety disorder in contradiction of the ALJ's failure to find that plaintiff's anxiety constitutes a severe impairment.[5] In the absence of any meaningful discussion of plaintiff's other mental impairments and their effect on plaintiff's RFC, the undersigned concludes the ALJ's severity decision regarding plaintiff's mental

---

[4]The ALJ also notes that plaintiff's overdose was a result of "manipulative intent" as plaintiff stated that she overdosed on drugs to avoid arrest for outstanding warrants. (Tr. 16, citing Tr. 537). It appears the ALJ makes note of this in order to support her determination that plaintiff's depression is not a severe impairment as the overdose was not related to suicidal ideation. However, such an analysis completely overlooks that plaintiff's reflexive and self-destructive conduct under stress strongly supports a finding that her *anxiety disorder* causes more than a mild impairment.

[5]The ALJ's treatment of Dr. Chambly's opinion regarding plaintiff's mental RFC is discussed further in

impairments is not substantially supported by the record. Accordingly, the ALJ's decision should be remanded with instructions to the ALJ to consider the effects of plaintiff's anxiety and other documented mental impairments on plaintiff's RFC.

      B.    *Physical Impairments*

Plaintiff also asserts the ALJ erred in evaluating the severity of her physical impairments. Specifically, plaintiff argues the ALJ erroneously determined that plaintiff's Crohn's disease and associated diarrhea were not severe impairments. For the following reasons, the undersigned agrees.

The record is replete with evidence regarding plaintiff's treatment for Crohn's disease and associated gastrointestinal problems. The ALJ determined that plaintiff's Crohn's disease was not a severe impairment as it was currently in remission and plaintiff was not actively receiving treatment. (Tr. 16). The ALJ's determination is substantially supported in this regard. *See* Tr. 36 (plaintiff testified at the ALJ hearing that her Crohn's disease was in remission); Tr. 314 (January 2007 notes from plaintiff's treating gastroenterologist, Bikram Verma Ansil, M.D., indicate that a November 17, 2005 scan of plaintiff's bowel showed no evidence of active Crohn's); Tr. 319, 321 (Dr. Ansil opined in August 2007 that plaintiff's Crohn's was in remission, with occasional breakthrough cramping and diarrhea); Tr. 489 (consultative examining physician Damian M. Danopulos, M.D., opined in October 2007 that plaintiff's Crohn's disease was in remission); Tr. 573 (May 2009 treatment notes from Digestive Specialists, Inc. include findings that plaintiff's Crohn's disease was in remission and that she was "not on active IBD treatment"); Tr. 582-83 (March 2009 colonoscopy results showed no evidence of Crohn's disease). Given the objective findings, medical opinion evidence, and

---

plaintiff's own testimony that her Crohn's disease is in remission, the ALJ's determination that it is not a severe impairment is substantially supported. Nevertheless, the undersigned finds that the ALJ erred in evaluating the severity of plaintiff's irritable bowel syndrome (IBS) and diarrhea.

Review of the medical record demonstrates that while plaintiff may occasionally experience relief from IBS and diarrhea, it is a long-standing condition for which she receives ongoing treatment. *See* Tr. 313 (in January 2007, plaintiff reported 6-8 episodes of diarrhea daily with mucous and occasional blood in stool); Tr. 346 (plaintiff presented to Dr. Ansil in April 2007 with persistent diarrhea worsening post-cholecystectomy which was likely due to Crohn's and IBS). Treatment notes from Dr. Ansil's office also include plaintiff's reports of ongoing diarrhea after her Crohn's disease was in remission. *See* Tr. 573 (in May 2009, plaintiff assessed with IBS; report notes alternating diarrhea and constipation); Tr. 577 (same, with plaintiff reporting up to "7-10 mucus containing, yellow stools per day"); Tr. 591-92 (in February 2009, plaintiff reported 10-12 stools per day and Dr. Ansil opined that the worsening diarrhea may represent Crohn's exacerbation); Tr. 595 (plaintiff reported alternating diarrhea and constipation and was noted as having a history of IBS); Tr. 597 (in July 2008 Dr. Ansil opined that plaintiff's diarrhea was likely a result of her IBS). Further, plaintiff testified in June 2010 that although her Crohn's was in remission, she continued to have bowel incontinence which requires frequent trips to the bathroom and that she bring a change of clothes with her whenever she leaves home in the event of an episode. (Tr. 36, 47-48).

Regarding plaintiff's diarrhea, the ALJ simply stated that "treatment notes further reflect that [plaintiff] presented with intermittent complaints of diarrhea, but the condition was

11

controlled with Lomotil."[6]  (Tr. 14, citing *generally* Tr. 570-649).   This superficial discussion

of the medical evidence fails to fully reflect the extent of plaintiff's gastrointestinal impairments.

Notably, the ALJ generically cites to nearly 100 pages of medical records from the Digestive

Specialists' treatment notes to support her determination that plaintiff's diarrhea is controlled

with Lomotil.   A review of this evidence demonstrates that out of the 13 documented treatment

visits, plaintiff reported relief from diarrhea on only three occasions and only twice when she was

taking Lomotil.   *See* Tr. 618 (in November 2007 plaintiff reported relief from diarrhea with

Lomotil but reported ongoing abdominal pain and constipation); Tr. 622 (plaintiff reported relief

from diarrhea in August 2007 prior to taking Lomotil); Tr. 635 (same in April 2007).     At the

other ten visits, plaintiff reported ongoing problems with diarrhea and/or IBS.   *See* Tr. 572-73

(on May 27, 2009, plaintiff reported experiencing diarrhea despite taking Lomotil); Tr. 577 (on

May 6, 2009, plaintiff reported bouts of diarrhea seven to ten times a day); Tr. 585 (February 23,

2009 notes reveal seven to ten episodes of diarrhea daily with blood in feces); Tr. 594 (January

2009 notes include reports of diarrhea); Tr. 596 (July 2008 notes include findings of IBS

including diarrhea); Tr. 605 (in May 2008 plaintiff reported diarrhea); Tr. 611 (plaintiff reported

an increase in diarrheic episodes in February 2008 which was likely related to her IBS 2); Tr. 616

(November 2007 notes reveal plaintiff's complaints of IBS-associated diarrhea); Tr. 627

(plaintiff reported diarrhea while taking Lomotil in June 2007); Tr. 644 (in January 2007 plaintiff

complained of diarrhea with six to eight episodes daily and occasional blood in stools).   The vast

majority of the evidence cited by the ALJ fails to support her determination that plaintiff's

diarrhea is well controlled.   Indeed, at two visits plaintiff complained of experiencing diarrhea

---

[6]Lomotil is a medication used to treat diarrhea.   *See* http://dailymed.nlm.nih.gov/dailymed/archives/fda
DrugInfo.cfm?archiveid=1243 (last visited May 8, 2013).

despite taking Lomotil.  *See* Tr. 572-73, 627.  Accordingly, the undersigned finds that the ALJ's determination that plaintiff's diarrhea is well controlled with Lomotil is not supported by substantial evidence.

The Court further concludes that the evidence of record demonstrates that plaintiff's IBS and diarrhea constitute more than "mild impairments" to the extent they impose nonexertional functional limitations on plaintiff's ability to work.  *See* 20 C.F.R. § 404.1569a(a).  *See also Spencer v. Comm'r of Soc. Sec.*, No. 1:11cv328, 2012 WL 1068876, at *10 (N.D. Ohio Jan. 27, 2012) (Report and Recommendation), *aff'd*, 2012 WL 1068874 (N.D. Ohio Mar. 29, 2012) (frequent diarrhea is a nonexertional limitation which ALJ must consider in formulating RFC) (citing cases).  Plaintiff's testimony that she requires frequent visits to the bathroom is consistent with extensive treatment records, discussed above, and supports a finding that her IBS and diarrhea are severe impairments.  The ALJ's decision to the contrary should therefore be remanded with instructions that the ALJ determine the functional limitations caused by plaintiff's gastrointestinal conditions.[7]

2.  The ALJ improperly rendered a medical opinion.

For her second assignment of error, plaintiff asserts the ALJ improperly generated her own medical opinion regarding plaintiff's mental impairments in lieu of adopting Dr. Chambly's opinion that plaintiff has moderate difficulties in maintaining social functioning.  The Commissioner asserts in opposition that the ALJ's determination that plaintiff has only mild

---

[7]The Commissioner asserts the ALJ's failure to find that plaintiff had additional severe impairments is harmless error under *Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240 (6th Cir. 1987).  *Maziarz* stands for the proposition that where the ALJ considers the limitations of additional impairments in formulating a plaintiff's RFC, any error in not classifying the impairments is harmless.  *Id.* at 244.  Here, however, the ALJ's decision does not reflect that the ALJ considered the limitations of plaintiff's anxiety, Crohn's disease, IBS, or frequent diarrhea in formulating her RFC.  Thus, *Maziarz* is inapt.

13

limitation in social interaction is substantially supported by the record. For the following reasons, plaintiff's argument is well-taken.

The medical opinion evidence on plaintiff's social functioning limitations is limited to the opinions of Dr. Deardorff, Dr. Chambly, and Dr. Meyer. Pursuant to his examination of plaintiff in December 2007, Dr. Deardorff opined that plaintiff's "mental ability to relate to others including fellow workers and supervisors is moderately impaired by her emotional difficulties." (Tr. 500). Dr. Deardorff added that plaintiff reported "difficulty trusting others" and opined that this "may lead to misinterpretation of information and increases in symptoms of depression and anxiety." *Id.* Dr. Chambly gave weight to Dr. Deardorff's opinion and found that plaintiff had moderate difficulties in social functioning but retained the capacity for simple and routine work that involved only superficial contact. (Tr. 504). Dr. Meyer reviewed plaintiff's file following her March 2008 hospitalization, again gave weight to Dr. Deardorff's opinion noting its ongoing consistency with the record evidence, and affirmed Dr. Chambly's assessment. (Tr. 568).

Despite the complete consistency among these medical opinions, the ALJ determined that plaintiff has only "mild limitations" in social functioning. (Tr. 17). In support, the ALJ identified that Dr. Chambly's notes (summarizing Dr. Deardorff's notes) show that plaintiff has "many friends, helps out with chores and spends time with her boyfriend. Since Dr. Chambly gave her opinion, the [plaintiff] has begun a long term relationship with this individual, lives independently and cares for a young child . . . ." *Id.* These notes, however, were based on Dr. Deardorff's 2007 one-time examination and do not adequately represent the record as a whole regarding plaintiff's social functioning. For example, following Dr. Chambly's assessment, plaintiff reported being homeless and having limited social support while receiving treatment

14

following her March 2008 overdose. (Tr. 535). Plaintiff also testified at the ALJ hearing in

2010 that she only occasionally visits with one friend and depends on her mother-in-law to assist

with childcare due to her physical pain. (Tr. 42-43). The ALJ did not address this later social

functioning evidence which contradicts Dr. Chambly's notes; thus, the undersigned is unable to

discern if this evidence was not credited or simply ignored by the ALJ. *See Bledsoe v. Comm'r

of Soc. Sec.*, No. 09cv564, 2010 WL 5795503, at *3 (S.D. Ohio Aug. 31, 2010). Accordingly,

the Court cannot conclude that the ALJ's decision in this regard is supported by substantial

evidence.[8]

While the ALJ is permitted to look to other factors "which tend to support or contradict

the opinion" evidence from Dr. Chambly, 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6),[9] such as

inconsistency between her notes and medical opinion, the ALJ may only rely on this evidence in

determining what weight to give an opinion. "ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*,

344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted). This is precisely what the

ALJ did in this case. Despite the consistent medical opinions of three doctors who all opined

that plaintiff had moderate limitations in social functioning, the ALJ unilaterally determined that

based on purportedly inconsistent notes from Dr. Chambly that plaintiff's limitations were

simply "mild."[10] There is not one single medical opinion supporting the ALJ's assessment of

---

[8]Other record evidence further suggests that while plaintiff may have had success in her interfamilial
relationships, she nevertheless suffered significant limitations in her social functioning capabilities. *See* Tr. 202
(plaintiff reported that she had been disciplined at work and fired for fighting with coworkers); Tr. 235 (plaintiff's
husband reported that plaintiff was fired from her job at Donato's Pizza for "verbal disagreements").

[9]Regulations 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions
governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

[10]The ALJ's determination that plaintiff had mild social functioning limitations is a medical opinion and is
distinct from the ALJ's authority to determine plaintiff's RFC under 20 C.F.R. §§ 404.1527(c) and 416.927(c).

15

only "mild" social functioning limitations. The Court therefore concludes that the ALJ impermissibly created her own lay medical opinion with regard to plaintiff's mental impairments in contravention of the applicable regulations and the weight of the evidence.

    3.  The ALJ's RFC formulation is not supported by substantial evidence.

For her final assignment of error, plaintiff contends the ALJ erred by presenting a hypothetical question to the VE which did not reflect all of plaintiff's supported limitations. Given the above findings that the ALJ erred in evaluating the severity of plaintiff's mental and physical impairments and erred by creating her own medical opinion regarding plaintiff's mental impairments, the ALJ's RFC finding is also without substantial support in the record. Consequently, the hypothetical question presented to the VE does not properly reflect plaintiff's impairments and/or limitations. The ALJ therefore erred at Step 5 of the sequential evaluation process by relying on the VE's vocational testimony. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical question failed to accurately portray plaintiff's impairments, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's final assignment of error should be sustained.

## III. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish

plaintiff's entitlement to benefits as of her alleged onset date.  *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).  On remand, the ALJ should evaluate the severity of all of plaintiff's documented mental and physical impairments and fully articulate her rationale in support of her findings.  The ALJ should further designate the medical opinion evidence supporting her RFC formulation, especially as it regards plaintiff's mental impairments.  The ALJ must also clearly articulate the rationale in support of her RFC finding and provide hypothetical questions to the VE which accurately portray plaintiff's impairments.  If necessary, the ALJ should elicit testimony from a medical expert.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: **5/29/2013**

Karen L. Litkovitz
United States Magistrate Judge

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CARRIE A. CHATTERTON,                        Case No. 1:12-cv-284
     Plaintiff,                             Beckwith, J.
                                             Litkovitz, M.J.
     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).